**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| POLAMESHA WILLIAMS, : : Plaintiff, : : v. : : Commissioner BRIAN OWENS, : GEORGIA DEPARTMENT OF : CORRECTIONS, CALHOUN STATE : PRISON, and CLAY TATUM, : : Defendants. : : | CASE NO.: 1:11-CV-142 (WLS) |

## ORDER

Before the Court is Defendants Brian Owens, Georgia Department of Corrections, Calhoun State Prison, and Clay Tatum's Motion for Summary Judgment. (Doc. 30.) For the reasons that follow, Defendants' motion is **GRANTED**.

## PROCEDURAL BACKGROUND

This Title VII case arises out of a confrontation between Plaintiff Polamesha Williams ("Williams") and Donovan Toole ("Toole"), both former correctional officers at Calhoun State Prison. After Williams slapped Toole during a disagreement, the prison warden, Clay Tatum, fired her for purportedly violating a workplace violence policy. Williams, a black woman, then filed suit alleging her termination resulted from sex and race discrimination. She claims her firing was pretextual because Toole, a white man with an alleged history of instigating violence, was not also fired.

After the close of discovery, Defendants moved for summary judgment. They raise a number of arguments. First, they claim that Defendants Tatum, Owens, and Calhoun State Prison are improper parties because Williams seeks to hold the employer,

1

the Department of Corrections, liable. Second, Defendants argue Williams has not established a prima facie case because she has not identified a similarly situated person outside her protected class who did not suffer an adverse employment action. Finally, they maintain Tatum and his supervisors fired Williams for a legitimate, nondiscriminatory reason—namely, striking another employee.

Williams failed to respond to Defendants' motion for about four months. With the Court's leave, Williams filed an out-of-time response opposing summary judgment. In the response, Williams argues Toole is a similarly situated employee. Additionally, she claims that the termination was pretextual because Toole had a history of provoking violent reactions, and he violated the tardiness policy numerous times before being fired.

## STATEMENT OF UNDISPUTED FACTS

The following facts are derived from the Complaint (Doc. 1); the Answer (Doc. 19); Defendants' Statement of Undisputed Facts (Doc. 30-2)), which was submitted according to Local Rule 56;[1] and the record in this case. The facts are straightforward and essentially undisputed.

Williams, a black woman, began working as a correctional officer at Calhoun State Prison on May 5, 2005. (Doc. 32-2 ¶ 1; Doc. 37 ¶ 1.) Correctional officers with the Georgia Department of Corrections ("DOC") are expected to know and abide by DOC policies, procedures, rules and regulations, including the DOC Standard Operating Pro-

---

[1] Williams, who is represented by counsel, filed a deficient response to Defendants' Statement of Material Facts. First, Williams claims, in nearly half of her responses, she "is without further information sufficient to admit or deny" certain facts. In other responsive paragraphs, Williams denies certain facts without citation to the record. This Court's local rules provide: "All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise appropriate. The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56[d] of the Federal Rules of Civil Procedure." These deficient responses are, therefore, deemed admitted.

2

cedures ("SOP"). (Doc. 30-2 ¶ 3; Doc. 37 ¶ 3.) The SOP provides that "employees must conduct themselves in a manner which reflects credit upon themselves, their co-workers, and the Department." (Doc. 5, Ex. B.) According to the SOP, "[e]mployees shall not engage in illegal activity or other activity which would violate public safety or public trust," such as "any assault or battery."(*Id.*) Moreover, workplace violence "will result in appropriate disciplinary action, up to and including dismissal, removal from the workplace and/or criminal charges." (Doc. 5, Ex. E.)

In 2009, Clay Tatum, a white man, was warden at Calhoun State Prison. (Doc. 30-2 ¶ 2; Doc. 37 ¶ 2.) That year, Williams was disciplined twice for conflicts with coworkers. On July 20, 2009, Williams received an Official Letter of Reprimand arising from a confrontation with another correctional officer, Dianundra Parks.[2] Then on December 11, 2009, Williams slapped Toole during a disagreement about work responsibilities in the prison control room. Toole did not strike Williams but walked to the telephone and reported the incident.

After Williams and Toole's confrontation, Tatum reviewed reports from the incident. (Doc. 30-5 ¶ 14.) Shift supervisors Lt. Jessie Tarver and Lt. Russell Hollman, both black men, reported that Toole told them that Williams struck him; she told them, "it was done as an impulse" because "[Toole] stepped into her personal space." (Doc. 30-5, Ex. D.) Tatum also reviewed William's statement. (Doc. 30-5 ¶ 14.) In her statement,

---

[2] Williams claims this information is hearsay and should be excluded. This assertion is wholly without merit. Ordinarily, inadmissible hearsay cannot be considered on a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)). But a district court may consider hearsay statements on a motion for summary judgment if the statement could be reduced to admissible evidence at trial. *Id.* Here, the Court may consider this evidence for several reasons. First, the statements in the letter are not offered for the truth of the matter asserted. Rather, Defendants proffered the letter to show its effect on Tatum's state of mind when he fired Williams. Second, even if the letter was hearsay, Tatum could testify himself at trial to the fact that he disciplined Williams on this occasion. Finally, the letter is a record of a regularly conducted activity under Federal Rule of Evidence 803(6).

Williams also said she struck Toole "on an impulse" because he "stepped into [her] personal space." (*Id.*)

Tatum viewed this incident as workplace violence. He considered Williams' prior confrontation with Parks and, taken together, thought these incidences demonstrated an inability to maintain composure. Tatum concluded that Williams' conduct violated several provisions of the SOP. He also thought the conduct created a safety concern because it indicated to inmates a lack of control over the area.

Before deciding to fire Williams, Tatum consulted several other sources. First, he reviewed the Adverse Sanction Guidelines provided by the DOC's Legal Office. These guidelines provided that workplace violence accompanied by aggravating circumstances, such as physical contact and prior adverse action, warranted dismissal. Tatum also contacted the DOC's Legal Office, which advised him that dismissal was appropriate. Tatum then decided to fire Williams.

Toole did not receive any discipline. Tatum testified Toole was not disciplined because he did not strike Williams or violate the SOP rules. Moreover, to Tatum's knowledge, Toole never engaged in violence during his employment at the prison.

On December 14, 2009, Tatum notified Williams he intended to fire her for the incident, effective December 15, 2009. The letter informed her she had a right to request review of the decision. Williams appealed the dismissal to Robert Cooley, a black man, who is the Commissioner's Designee for Adverse Action. Tatum provided Cooley with the reasons for his decision. Williams submitted statements from herself, Tarver, and Hollman. On December 22, 2009, Williams and Tatum received notice from Cooley upholding the dismissal.

4

Williams also wrote the Commissioner of the DOC, Brian Owens, a white man, alleging her termination was racially motivated. Owens initiated an investigation into the decision. Nola Bricker, a white woman, interviewed Williams and other witnesses, reviewed personnel files, and studied the demographic makeup of the prison. She concluded that Williams' claim of racial discrimination was unsubstantiated.

## DISCUSSION

### I. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). A fact is "material" if it is a legal element of the claim under the applicable substantive law and it might affect the outcome of the nonmoving party's case. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. See *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex Corp.*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing

5

out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must provide "enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986)).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex Corp.*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**II. Race and Sex Discrimination**

Title VII makes it unlawful for employers to discriminate "with respect to [an employee's] compensation, terms, or privileges of employment" on the basis of "race, color religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)(a). A plaintiff may prove she received disparate treatment on account of her race or sex through direct or circumstantial evidence. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Wilson v.*

*B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citation omitted). Where, like here, the plaintiff relies on circumstantial evidence, she may satisfy her burden through the *McDonnell Douglas* burden-shifting framework. *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012).

The *McDonnell Douglas* burden-shifting framework requires the plaintiff to first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff establishes her *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.*; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). If the employer offers a legitimate reason for the decision, the plaintiff must then produce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

In this case, Williams claims she suffered disparate treatment because of her race and sex. To establish a prima facie case of disparate treatment, the plaintiff must show (1) she belonged to a protected class; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) her employer treated similarly situated employees outside of her class more favorably than she was treated. *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006).

Defendants claim Williams cannot establish her prima facie case because she has not identified any similarly situated employees who received more favorable treatment. Alternatively, they argue they have a legitimate, nondiscriminatory reason for firing Williams—workplace violence—and she has not refuted that reason by providing evidence of a pretext.

7

### (a)     Similarly situated employees

The Court agrees with Defendants that Williams has failed, as a matter of law, to identify a comparator outside her protected class. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The "quantity and quality of the comparator's misconduct must be nearly identical." *Stone & Webster Constr., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1135 (11th Cir. 2012). "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishment imposed." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citation omitted).

Williams claims Toole is a similarly situated because they both "were correctional officers assigned to the same area(s)." (Doc. 38 at 3.) And while Williams was fired after two incidents of misconduct, "Toole was not terminated until after he violated GDOC policies multiple times (chronic tardiness)." (*Id.* at 4.) Moreover, "Toole had a history of invoking violence through actions with his co-workers." (*Id.*) But Toole's and Williams's misconduct are not "nearly identical." They are not even alike. Tardiness is a far cry from battery—one is unprofessional, the other a crime. And even assuming Toole had a "history" of provoking violence—an inference unsupported by record evidence and any reasonable inference[3]—there is no allegation he slapped or struck another employee.

---

[3] Other than the incident resulting in her dismissal, Williams failed to identify any incidents of Toole actually provoking violence. To support this allegation, Williams points to a statement from another correctional officer she obtained after her termination, which said:
> On March 11, 2010, at approximately 1340 hours I, Officer Peterson, was exiting the briefing room. Officer Toole was standing in the doorway. I turned sideways to get by Officer

8

Had he been the incendiary Williams suggests, he would still not be similarly situated because there is no evidence Tatum knew of such conduct and had reason to discipline.

At bottom, Williams has not identified a white or male correctional officer who, like her, hit another officer while on duty. It is clear, based on the undisputed DOC guidelines, that prison officials consider workplace violence coupled with physical contact to warrant severe sanction. Williams has not identified a comparator and has therefore failed to establish her prima facie cases of race and sex discrimination.

### (b)  Evidence of a pretext

Even if Williams had established her prima facie case, Defendants would still be entitled to a judgment as a matter of law. Williams has not refuted their legitimate, non-discriminatory reason for her termination. As previously mentioned, once the plaintiff establishes her prima facie case, the burden of production shifts to the defendant to show it terminated her for a legitimate, nondiscriminatory reason. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). "[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "If the defendant carries this burden of production, the presumption raised by the prima facie case is

---

> Toole. He then brushed up against me. I asked Officer Toole to stop playing. He in turn put his fists up in a defense manner and stated [sic] ' What you want to do Officer Peterson. [sic] Go ahead hit me. [sic] I told Officer Toole to get out of my face and quit playing. He continued to bounce around like he wanted to fight. Officer Toole tends to play entirely too much at times. He constantly aggravates employees to the point where you really want to put your hands on him but you can't because you will be fired and Officer Toole will still have his job.

After the December 11, 2009 incident, Williams also informed Cooley that "Officer Toole later expressed his apologies to me. I too, [sic] apologized to him. He claimed that he was only joking and that I understood his intentions. I explained to him, whether joking or not, he had no right to invade my personal space. Officer Toole does have a reputation of being playful; however, he had never approached me in the manner in which he did." (Doc. at 129–30.) Even viewed in the light most favorable to Williams, these reports fail to establish Williams had a "history" of provoking violence.

rebutted . . . and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation and quotation marks omitted).

To show that the defendant's proffered reason is a pretext, the plaintiff must introduce evidence sufficient to permit a reasonable factfinder to conclude that reason was not the real reason for the termination. *Hulbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)). A plaintiff may show that the use of a "work rule" is pretextual by providing evidence (1) she did not violate the cited work rule, or (2), if she did, other employees outside the protected class, who engaged in similar acts, were not similarly treated. *Damon v. Fleming Supermarkets of Fla. Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999) (citing *Alphin v. Sears, Roebuck & Co.*, 904 F.2d 1497 1401 n.1 (11th Cir. 1991)). Ultimately, "[federal courts] do not sit as a 'super-personnel department,' and it is not [their] role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (quoting *Chapman*, 229 F.3d at 1030).

Here, Defendants have provided a legitimate, nondiscriminatory reason for Williams' termination. The DOC procedures proscribe workplace violence, assault and battery, and conduct that undermines public trust in the DOC. The DOC Adverse Sanction Guidelines also provides that workplace violence with physical contact warrants dismissal. There is no dispute that Williams did, in fact, strike Toole. Before reaching his decision, Tatum reviewed four statements, all of which corroborated the narrative that Williams impulsively slapped Toole during a disagreement. Tatum also consulted with the DOC Legal Office, which informed him dismissal was appropriate.

10

Williams argues this reason was a pretext because she merely defended herself against Toole, "who had a history of inciting violent behavior (albeit no actual striking of another employee)." (Doc. 38 at 4 (parenthesis in original).) But there is no evidence the prison officials responsible for the discipline knew Williams defended herself against Toole or that Toole had a history of inciting violent behavior. Tatum testified, without contradiction, that to his knowledge, "Toole never engaged in a physical altercation during his tenure at Calhoun State Prison." Williams' own statement explained she and Toole "had a moment where he stepped into my personal space and I reacted on an impulse and struck him in the face." None of the incident statements explain that Williams acted in self-defense.

More importantly, prison officials were entitled to treat different conduct differently, and the Court does not sit to second-guess those decisions. There is no dispute that Williams alone struck another employee. Perhaps Toole instigated that reaction. But given that Toole's and William's conduct were dissimilar—and hers uniquely serious—Williams cannot establish a pretext merely by pointing out that she was fired and Toole was not. There is no evidence the DOC applied the workplace-violence rule inconsistently or deviated from its rules when punishing Williams. To the contrary, Williams' discipline set in motion a multi-stage, well-documented review that involved people of other race and gender than Tatum.

Williams has not provided sufficient evidence for a reasonable factfinder to conclude that workplace violence was not the real reason for the discipline. The defendants are also entitled to summary judgment on this alternative ground.

## **CONCLUSION**

For those reasons, Defendants' Motion for Summary Judgment (Doc. 30) is **GRANTED**. It is hereby **ORDERED AND ADJUDGED** that Williams shall take nothing by her Complaint (Docs. 1), and **JUDGMENT** shall be entered in favor of Defendants.

**SO ORDERED**, this  31st  day of July 2013.

                                       /s/ W. Louis Sands
                                       **THE HONORABLE W. LOUIS SANDS,**
                                       **UNITED STATES DISTRICT COURT**